# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| DENNIS M. PALM, MICHAEL WILLIAM LEX, KATIE KUGLER-LEX, | Civil No. 11-1749 (JRT/TNL) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION TO DISMISS** |
| ROCK BOTTOM RESTAURANTS, INC. d/b/a Craftworks Restaurants & Breweries Group, Inc. d/b/a Old Chicago, Inc., | |
| Defendant. | |

Thomas J. Lyons, **LYONS LAW FIRM, P.A.**, 367 Commerce Court, Vadnais Heights, MN 55127, for plaintiffs.

Jennifer Y. Dukart, Aaron D. Van Oort, and Joseph A. Herriges, **FAEGRE BAKER DANIELS LLP**, 90 South Seventh Street, Suite 2200, Minneapolis, MN 55402, for defendant.

This is a putative consumer class action case alleging breach of contract and violation of the Colorado Consumer Protection Act (CCPA). Members attaining "VIP" status in Old Chicago's World Beer Tour (WBT) received a 36-ounce beer stein, which they were entitled to fill for the price of a pint at any Old Chicago restaurant. Following a change in corporate ownership, Old Chicago replaced the 36-ounce steins with 22-ounce steins, effectively reducing VIP members' discount by depriving them of 14 ounces of beer with each fill. Plaintiffs allege that Old Chicago deliberately concealed the fact of the size change from VIP members with a communication stating that VIP

members could fill up the forthcoming new mug "just as always."  Plaintiffs' complaint alleges that this omission amounted to breach of contract and a "false attempt to preserve plaintiffs' patronage and goodwill" in violation of various provisions of the CCPA.  (Am. Class Action Compl., ¶¶ 1, 68-72, 73-81, Sept. 30, 2011, Docket No. 13.)  Old Chicago now moves to dismiss the CCPA claims only.  Because plaintiffs have failed to plausibly plead reliance on Old Chicago's alleged misrepresentation and Old Chicago's intent to induce such reliance, the Court will grant the motion and dismiss the CCPA claim with prejudice.

## BACKGROUND

Defendant Rock Bottom Restaurants, Inc. d/b/a Craftworks Restaurants & Breweries Group, Inc. d/b/a Old Chicago, Inc. ("Old Chicago") serves food and beer. Old Chicago is headquartered in Colorado.  (Am. Compl. ¶ 5.)  Servers at the Old Chicago restaurant in Blaine, MN told plaintiffs about the Old Chicago World Beer tour, which consists of purchasing "all 110 beers that Old Chicago offers for sale."  (*Id.* ¶¶ 10, 12, 27, 29.)  Patrons completing the WBT become "members" and receive rewards.  (*Id.* ¶¶ 11, 28.)

### **Dennis Palm**

An unnamed server at the Old Chicago restaurant in Blaine told Palm that the mugs he noticed behind the bar were awarded to "VIP" WBT members, those who completed ten tours of the 110 beers.  (*Id.* ¶ 15.)  The server told Palm that "if he completed ten tours he would be entitled to have his 36-ounce mug filled for the price of

a pint anytime he visited an Old Chicago restaurant." (*Id.* ¶ 16.) Palm completed the ten tours around January 2007 – costing him over $5,000 – and received a membership card and beer stein which held 36 ounces of beer. (*Id.* ¶¶ 17-18.) The membership card nowhere mentions that the discount earned by VIPs is subject to change. (*Id.* ¶ 19.) Palm interpreted the absence of a time limitation on the refilling of his stein to mean that Old Chicago promised the discount for life. (Palm Aff. ¶¶ 4-5, Nov. 2, 2011, Docket No. 21.)

In late fall of 2010, a bartender at the Blaine restaurant gave Palm a letter informing him that Old Chicago was changing the steins. (Am. Compl. ¶¶ 21-22.) Announcing "great news," the letter stated that the new VIP mug would be better in a number of ways, including that "Just as always, you can fill this mug with any draft beer you wish for the price of a pint!" (*Id.*) The letter said nothing about a change in size. (*Id.*) On February 6, 2011, Palm received the new stein; it holds about 22 fluid ounces. (*Id.* ¶¶ 23, 24.) This smaller pint effectively reduces Palm's discount. (*Id.* ¶ 25.)

The amended complaint roots Palm's breach of contract action in a unilateral contract theory. (Am. Compl. ¶ 69.) It drops the CCPA claim that Palm asserted in the original complaint. (*Id.* ¶ 73; *see also* Compl., ¶¶ 37, 38, July 1, 2011, Docket No. 1.)

### **Michael Lex and Katie Kugler-Lex ("Lex Plaintiffs")**

As with Palm, an unnamed bartender at the Blaine, Minnesota Old Chicago restaurant informed the Lex Plaintiffs, already WBT members, that they would receive 36-ounce mugs if they completed ten tours. (Am. Compl. ¶¶ 31-32.) The server told

them that "after receiving their 36 ounce mugs they would be entitled to fill the mugs for the price of a pint anytime they visited an Old Chicago restaurant." (*Id.* ¶ 32.) Michael Lex completed his tenth tour "around 2004," (*Id.* ¶ 33), while Katie Kugler Lex completed her tenth tour "around 2007." (*Id.* ¶ 37.) Michael completed an additional twenty-eight tours (3,080 beers) at the Blaine restaurant using his stein between 2004 and 2010. (*Id.* ¶ 36.) Katie completed an additional twenty-four tours (2,640 beers) between 2007 and 2010. (*Id.* ¶ 40.)

The Lex Plaintiffs received an email on November 29, 2010 from Old Chicago notifying them of the "great news" that the restaurant was changing its steins. (*Id.* ¶¶ 41, 42.) The email stated: "Just as always, you can fill this mug with any draft beer you wish for the price of a pint!" (*Id.* ¶ 42.) The email did not state that the VIP mug would change in size. (*Id.*) The Lex Plaintiffs continued to patronize Old Chicago in reliance on the representation that VIP members would continue to receive their discounts "just as always." (*Id.* ¶ 43.) Had the email noted that the new mugs were smaller, the Lex Plaintiffs "would not have patronized Old Chicago restaurants with the same frequency" using the old 36-ounce steins during the two-and-one-half month period between the email (November 19, 2010) and the day they received the new, smaller mug (February 5, 2011). (*Id.* ¶ 47.)

Like Palm, the Lex Plaintiffs allege breach of contract on the theory that Old Chicago's promotion was an offer for a unilateral contract. (*Id.* ¶ 69.) They also allege violation of the CCPA based on Old Chicago's 2010 email, which failed to note that the new stein was smaller than the old stein. (*Id.* ¶ 75.)

In affidavits accompanying their opposition to Old Chicago's motion to dismiss, all plaintiffs state that they were "aware that Old Chicago stated in some of its promotional materials that rewards were subject to change." (Palm Aff. ¶ 6; Kugler-Lex Aff. ¶ 5, Nov. 2, 2011, Docket No. 22; Lex Aff. ¶ 4, Nov. 2, 2011, Docket No. 23.) This information was not included in Plaintiffs' Amended Complaint.

## ANALYSIS

This motion is limited in scope. While plaintiffs assert two causes of action – breach of contract and violation of the CCPA – Old Chicago now requests dismissal of the latter claim only. Moreover, only the Lex Plaintiffs have asserted CCPA claims.

## I.    STANDARD OF REVIEW

Although a complaint need not contain "detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). The complaint must plead facts that render a defendant's liability plausible – not merely possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In reviewing a complaint on a motion to dismiss the Court takes as true all allegations in the complaint, which it construes in the light most favorable to the nonmoving party. *Carton v. Gen. Motors Acceptance Corp.*, 611 F.3d 451, 454 (8th Cir. 2010). It must not, however, give effect to conclusory allegations of law. *Stalley v. Catholic Health Initiatives,* 509 F.3d 517, 521 (8th Cir. 2007).

## A.    Colorado Consumer Protection Act

"To state a claim under the Colorado Consumer Protection Act, the Plaintiff must allege: (i) that the Defendant engaged in an unfair or deceptive trade practice; (ii) the practice occurred in the course of the Defendant's business; (iii) the practice significantly impacts the public as actual or potential consumers of the Defendant's goods or services; (iv) the Plaintiff suffered injury to a legally-protected interest; and (v) the challenged practice caused the Plaintiff's injury."  *Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1123 (D. Colo. 2010); *see also Brodeur v. Am. Home Assurance Co.*, 169 P.3d 139, 155 (Colo. 2007).

The Lex Plaintiffs allege that Old Chicago's email inviting them to fill up their new mugs "just as always" constituted a deceptive trade practice in violation of five provisions of the CCPA.[1]  (Am. Compl. ¶¶ 74-81.)  Plaintiffs nominally allege each

---

[1] "A person engages in a deceptive trade practice when, in the course of such person's business, vocation, or occupation, such person: . . .

    (e) Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith; . . .

    (g) Represents that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another; . . .

    (i) Advertises goods, services, or property with intent not to sell them as advertised; . . .

    (n) Employs "bait and switch" advertising, which is advertising accompanied by an effort to sell goods, services, or property other than those advertised

(Footnote continued on next page.)

required element.  (Am. Compl. ¶¶ 75-79.)  Old Chicago challenges the sufficiency of the

Lex Plaintiffs' reliance allegation: that they "frequented Defendant's restaurants in

reliance on Defendant's representation that the VIP discounts would not change."  (*Id.*

¶¶ 47, 79.)  The Lex Plaintiffs' allegation of reliance, in other words, is that they would

have used their 36-ounce mugs less in the months leading up to the mug switch had Old

Chicago been forthcoming about the new mug's smaller size.  As described below, the

Court finds that the CCPA claim fails to plausibly allege causation and intent to induce

reliance.

### A.        Reliance (Causation)

The issue of reliance is bound up with the causation requirement: if Plaintiffs did

not plausibly rely on Old Chicago's representation, causation is lacking.  *See Farmers*

*Ins. Exch. v. Benzing*, 206 P.3d 812, 814 (Colo. 2009) (holding that fraud on the market

theory cannot be used to satisfy causation element where market price was not the

impetus for plaintiffs' reliance).  Moreover, "determining whether a complaint states a

---

(Footnote continued.)

> or on terms other than those advertised and which is also accompanied by
> one or more of the following practices:

>> (I)  Refusal to show the goods or property advertised or to offer the services
>> advertised; . . .

> (u)  Fails to disclose material information concerning goods, services, or property
> which information was known at the time of an advertisement or sale if such
> failure to disclose such information was intended to induce the consumer to enter
> into a transaction[.]"

Colo. Rev. Stat. § 6-1-105.

plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 129 S. Ct. at 1940.

The Court finds that the Lex Plaintiffs' allegation of reliance is implausible. Consumer fraud plaintiffs typically allege a fraudulent representation that occurs **before** the purchase that induced them to make it. *See, e.g.*, *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 144, 148 (Colo. 2003). The 2010 email on which the Lex Plaintiffs base the CCPA claim occurred **after** plaintiffs had become VIP WBT members and used their VIP steins for years. They did not complete the ten WBTs to obtain VIP status in reliance on the "just as always" promise. Rather, the Lex Plaintiffs root the CCPA claims in the theory that but for Old Chicago's failure to inform them of the new mug's smaller size, they would have foregone use of the larger mugs in the months leading up to the exchange. As to why the Lex Plaintiffs – who collectively refilled their steins 5,720 times in the preceding years – would have deprived themselves of several months of larger pours, ostensibly in protest: "From Plaintiffs' perspective as loyal customers, there is a difference between taking advantage of rights vindicated by a court and taking advantage of rights you know you are about to be cheated out of." (Pls.' Mem. in Opp'n, at 15, Nov. 2, 2011, Docket No. 19.) This distinction is too slender a reed on which to rest a consumer fraud action. The Amended Complaint fails to plausibly plead reliance.

## B.      Intent to Induce Reliance

Moreover, the only potentially applicable CCPA provision asserted in the Amended Complaint requires intent to induce reliance on the omission.  The Amended Complaint alleges violations of five CCPA provisions, but four of these provisions are patently inapplicable.

Two provisions require advertisements of a product with intent not to sell the product as advertised.  Colo. Rev. Stat. §§ 6-1-105(1)(i) ("Advertises goods, services, or property with intent not to sell them as advertised"); 6-1-105(1)(n) ("Employs 'bait and switch' advertising, which is advertising accompanied by an effort to sell goods, services, or property other than those advertised or on terms other than those advertised and which is also accompanied by" practices including "refusal to show the goods or property advertised or to offer the services advertised.")  The 2010 "just as always" email was not selling anything; it was announcing a replacement mug in the rewards program that the restaurant would provide for free.  These provisions are therefore inapplicable to the Lex Plaintiffs' action.

Two additional provisions require that the challenged advertisement made an affirmatively false statement.  *See* Colo. Rev. Stat §§ 6-1-105(1)(e) ("Knowingly makes a false representation as to the characteristics . . . of goods"); 6-1-105(1)(g) ("Represents that goods . . . are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another").  The Amended Complaint identifies no statements in the November 2010 email that were affirmatively false.  The only sentence of that email alleged to be fraudulent – "Just as

always, you can fill this mug with any draft beer you wish for the price of a pint!" (Am. Compl. 42) – was accurate on its face.  Plaintiffs **could** (and can) continue to fill their steins for the price of a pint.  The steins are simply smaller.  These provisions are therefore inapplicable to the Lex Plaintiffs' action.

The remaining provision requires intent to induce reliance.  Colo. Stat. § 6-1-105(1)(u) ("Fails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale **if such failure to disclose such information was intended to induce the consumer to enter into a transaction**.") (emphasis added).  The sole allegation in the Amended Complaint of intent to induce reliance is that the "just as always" email was a "false attempt to preserve Plaintiffs' patronage and goodwill."  (Am. Compl. ¶ 1.)  In other words, Old Chicago omitted the size of the mug in the 2010 email in an effort to induce Plaintiffs to continue to patronize the restaurant for the next few months.  This assertion in the preamble of the Amended Complaint is a "mere conclusory statement[]" meant to support a "threadbare recital[] of a cause of action's elements."  *Iqbal*, 129 S. Ct. at 1940.  Because the allegation pleads no real facts, the Court need not accept it as true.  *See id.*  In sum, because the Complaint fails to plausibly plead reliance and intent to induce reliance, which the only potentially applicable CCPA provision requires, the Court will dismiss the CCPA claim.[2]

---

[2] Though the Court will dismiss these claims with prejudice, the Lex Plaintiffs may request permission to amend the Amended Complaint if they believe the pleading defect can be remedied.

**CONCLUSION**

The Court concludes that plaintiffs have failed to plausibly plead reliance on Old Chicago's alleged misrepresentation and Old Chicago's intent to induce such reliance. The Court will therefore grant Old Chicago's motion and dismiss with prejudice the CCPA claims for failure to state a claim upon which relief can be granted.

**ORDER**

Based upon the foregoing, the submissions of the parties, the arguments of counsel and the entire file and proceedings herein, **IT IS HEREBY ORDERED that** defendant Rock Bottom Restaurants, Inc.'s motion to dismiss plaintiffs' amended complaint [Docket No. 15] is **GRANTED in part** and **DENIED in part** as follows:

      a.      The motion is **GRANTED** as to Count II of the Amended Complaint [Docket No. 13].  The CCPA claims are **DISMISSED with prejudice**.

      b.      The motion is **DENIED** as to Count I of the Amended Complaint [Docket No. 13].

DATED:  June 25, 2012
at Minneapolis, Minnesota.

                                s/ John R. Tunheim
                                  JOHN R. TUNHEIM
                            United States District Judge